**Ted CURRY**

v.

**The UNITED STATES.**

No. 397–78.

United States Court of Claims.

Nov. 14, 1979.

---

4. These provisions are now found in 43 C.F.R. 4110.3–2(a) of the 1978 compilation of the Range Code.

Lynn S. Castner, Minneapolis, Minn., attorney of record, for plaintiff. George T. Morrow, II, Minneapolis, Minn., of counsel.

Alexander Younger, Washington, D. C., with whom was Acting Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant. Major Jon P. Bruinooge, Office of the Judge Advocate General, Dept. of the Air Force, Washington, D. C., of counsel.

Before DAVIS, NICHOLS, and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge.

This military pay claim is presented to the court on defendant's motion for summary judgment. The claim may be summarized by quoting the first two paragraphs of plaintiff's response:

This is an action for racial discrimination suffered by a black man while engaged in service of the United States of America. It is an action for declaratory and injunctive relief, and for damages for the deprivation of both liberty and private property, the right to which is protected by the due process clause of the Fifth Amendment of the United States Constitution; for involuntary, servitude and the right to be free from the "badges and incidents of slavery," secured by the Thirteenth Amendment of the United States Constitution; and for breach of an express and implied contract, the terms of which include certain provisions of the regulations of the United States Air Force and the laws and Constitution of the United States.

In his prayer for relief, plaintiff seeks retroactive appointment to the rank of Captain, a promotion he was unlawfully denied, a retroactive appointment to active reserve status, from the date of his separation from the service; and correction of his military record. He asks for substantial damages, back wages and benefits, of which he was deprived as a result of racial discrimination and prejudice, including additional readjustment pay, separation allowances, and general and punitive damages. This court has the power to grant him relief.

The petition asks for back wages and benefits, plus $250,000 in compensatory damages. For severe emotional distress and anguish caused to plaintiff he demands $100,000, for punitive and exemplary damages $1 million, and an unspecified amount for costs and attorney fees.

Plaintiff, a former Reserve officer in the United States Air Force, was scheduled to be discharged from active duty on June 27, 1975, through a reduction in force but was instead honorably discharged on that date for substandard performance of duty pursuant to Air Force Regulation (AFR) 36–3 (31 March 1971), thereby losing all Reserve status. It is this administrative discharge which plaintiff challenges here as violating his aforesaid constitutional, statutory and

regulatory rights and entitling him to the relief sought. The court has before it plaintiff's master personnel record, in two volumes, covering his total period of military service. We also have plaintiff's lengthy affidavit. From this record, the briefs of the parties, and the cases, we conclude defendant is entitled to judgment on its motion.

After prior enlisted service, plaintiff was commissioned as a Reserve second lieutenant on November 18, 1970. He attended pilot training at Williams Air Force Base, Arizona, and was awarded his wings on January 15, 1971. He was, thereafter, promoted to the temporary grade of first lieutenant in 1972 while attending B–52 bomber combat crew training in California. He was later assigned to the 23d Bombardment Squadron, Fifth Bombardment Wing, Strategic Air Command (SAC), Minot Air Force Base, North Dakota.

After a number of incidents at Minot Air Force Base, which led to plaintiff's being disqualified for further promotion in 1974, a selection board determined that he would have to show cause for his retention in the Air Force, pursuant to AFR 36–3, because of allegedly substandard performance of duty. A board of inquiry (board) was convened on April 16, 1975, to receive evidence and to make findings and recommendations in plaintiff's case. The board had before it four negative OERs prepared by three different officers over a 28-month period. The evidence also included deficient technical proficiency ratings, including failure of tests for professional proficiency. Altogether, in the statement of reasons, there were six allegations considered, based upon many documented incidents and evaluations regarding plaintiff's attitude, demeanor, and competency during the course of his service at Minot Air Force Base. Plaintiff faced charges of leadership failure, a scuffle with a female airperson for which he was administratively reprimanded, failure in a series of tests (both initially and on retake) involving the employment, security, and safety of nuclear weapons, failure to follow flight safety procedures, a downward trend in duty performance which resulted in his removal from co-pilot status, a defective attitude toward assigned duties, disrespect for authority, and unmilitary appearance. The board found that plaintiff had successfully rebutted allegations that he had violated regulations as to proper uniform and refusal to wear his helmet, but sustained all other allegations set forth in the statement of reasons and concluded that plaintiff had "failed to establish that he should be retained in the Air Force." The board recommended that plaintiff be honorably discharged from all appointments. The Air Force Board of Review concurred in this recommendation on June 25, 1975, and so did the Secretary on June 26, 1975. Plaintiff's discharge was effected on June 27, 1975.

Plaintiff argues that *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the fifth and thirteenth amendments, the Tucker Act, and the Air Force regulations "imply a claim of which this court has jurisdiction under 28 U.S.C. § 1491 for money damages and other relief arising out of racial discrimination suffered in the Armed Services." Plaintiff further purports to quote and to rely on the dictum of Chief Justice Marshall in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), that "the law is what this court says it is." Plaintiff misquotes the Chief Justice, who said: "It is emphatically the province and duty of the judicial department to say what the law is." The Chief Justice was not speaking for the Court of Claims, which was not then in existence. Our jurisdiction is a limited one. 28 U.S.C. § 1491 (1976). *See Savio v. United States,* 213 Ct.Cl. 737, 740 (1977); *Eastport S. S. Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599 (1967). Nor is *Bivens* in point. That case was one brought against individual Government agents for allegedly unreasonable searches and seizures, and the Supreme Court held that plaintiff had stated a valid cause of action under the fourth amendment for which damages were recoverable upon proof of injuries arising from proven violation of the amendment. But, here plain-

tiff's suit is not against individuals but against the United States, for alleged emotional distress, anguish, and humiliation. These are torts over which we absolutely have no jurisdiction, as made explicit by the Tucker Act, 28 U.S.C. § 1491. *Eastport S. S. Corp. v. United States, supra,* 372 F.2d at 1010, 178 Ct.Cl. at 609. Nor does plaintiff have a contractual right that can be enforced here. An officer's rights are derived from statute and regulation. *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *Wade v. United States,* 212 Ct.Cl. 593, 595, *cert. denied,* 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977). Appointments as officers are discretionary with the President. *Orloff v. Willoughby,* 345 U.S. 83, 90, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Reserve commissioned officers may be discharged at his pleasure. 10 U.S.C. §§ 1162, 8447(c) (1976). As we have said many times, the court is not in the promotion business when selection for promotion is discretionary. *Wright v. United States,* 209 Ct.Cl. 734 (1976); *Abruzzo v. United States,* 513 F.2d 608, 206 Ct.Cl. 731 (1975). We cannot interfere in the business of the military unless there is a violation of statute or regulation or abuse of discretion amounting to legal error. *Boyd v. United States,* 207 Ct.Cl. 1 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). This restriction applies not only to appointments and to promotions but also to correction of military records. *Dorl v. United States,* 200 Ct.Cl. 626, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). Plaintiff's separation from the Air Force followed the regulation, AFR 36–3, and the statute, 10 U.S.C. § 1163(a). Further, plaintiff cited us to no law, regulation, or evidence to show that he was legally entitled to a promotion, but broadly alleges his nonpromotion was the product of racial discrimination.

■ Examination of the record in the case indicates that there was a social incident in which racial bias was expressed against plaintiff by an officer who apologized for it the next day. While we regard the incident as unfortunate and inexcusable, there is nothing, however, from which

we can conclude that it entered into plaintiff's inability to pass his examinations for technical proficiency as a flight officer. Such failures were basic to his administrative separation from the service.

Plaintiff's petition does not allege that he has sought to have his OERs corrected by the Air Force Board for the Correction of Military Records, although he alleges that his poor OERs are the direct result of racial prejudice. Nor does he show that he has sought to exploit any remedies for these matters by an officer personnel records review board. The court could not mitigate or upgrade plaintiff's OERs as these authorities could have done if merited. Instead, plaintiff asks for declaratory or injunctive relief. This court does not have authority to grant such relief. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

■ Plaintiff contends that he was denied his request for a 1-week postponement of the board of inquiry proceedings and for the presence of two particular witnesses and that these denials constituted procedural error which denied him due process. We have examined these contentions carefully. They are governed by the regulation. The board hearing may be delayed but such a request "must clearly establish that the delay is essential for the respondent to prepare his case for presentation to the Board." AFR 36–3, ¶ 28c. In the discretion of the board's legal adviser, the request was denied. We are satisfied that the denial did not prejudice plaintiff's rights and was not an abuse of discretion. As to witnesses, AFR 36–3, ¶ 28d, in pertinent part, says that they may be asked to appear "provided the legal adviser determines that the respondent or recorder has reasonably shown that the testimony of the witness will be substantial, material and necessary for a proper disposition of the case."

One of the officers plaintiff requested as a witness was a four star general, Russell E. Dougherty, Commander-in-Chief, Strategic Air Command, Offutt Air Force Base, Nebraska. Plaintiff said that the general

"could provide the factual basis for [plaintiff's] denied promotion to Captain." Anyone with the barest familiarity with the military would know that this is not so. Such information as the general might possibly have had would have been secondhand and derived from two officers of lower rank, both of whom testified at the hearing and who had the required firsthand knowledge. One of these had been plaintiff's squadron commander. Another witness requested by plaintiff was "to explain why the IG complaints investigated by him were not complete and factual." The legal adviser reasonably decided that this officer should not be brought from Washington to North Dakota to testify on a matter not relevant to the issue before the board of inquiry, i. e., whether plaintiff's performance of duty merited retention.

■ The real gravamen of plaintiff's complaint seems to be his claim of racial prejudice and that the entire consideration of his performance, the letter of reprimand, his OERs, and other evaluations were based upon such prejudice. In response to his ratings as "below average" and not as demonstrating a capability for promotion or retention, he does not illustrate any specific violation of mandatory procedures, statutes, or regulations. We find no such legal errors but, on the contrary, substantial evidence to support the action taken. Plaintiff seems to recognize that is where the record stands, so he says the pending motion must be denied because there are facts in dispute and that "plaintiff contemplates extensive discovery, involving the use of expert witnesses, for the purpose of evaluating defendant's system of officer evaluation and its realized potential of racial discrimination." The court is not a proper instrument to conduct sweeping policy inquiries of this nature, nor is this case appropriate to precipitate such an inquiry by any court. The matter is more properly for Congress. *Schlesinger v. Ballard*, 419 U.S. 498, 510, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). We must decide the motion on what is before us, without interfering in the internal affairs of the Air Force. There is no genuine issue of relevant fact.

■ Finally, plaintiff has no entitlement to back pay. He was, in any event, scheduled for discharge through reduction in force on the day he was in fact discharged for administrative reasons. Thus, he lost no pay as a result of AFR 36–3 action. Plaintiff admitted before the board of inquiry that he would not be entitled to compensation if discharged under a RIF "other than transportation of my goods back to my home of reference." None of plaintiff's other claims merit discussion.

Upon consideration of defendant's motion for summary judgment, plaintiff's response thereto, the administrative record, exhibits, and plaintiff's affidavit in the record before us, without oral argument, we conclude that defendant's motion should be and it is granted. The petition is dismissed.